UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JUN 27  4 07 PM '05
CLERK
WEST[...]

| | | |
|---|---|---|
| XPEL TECHNOLOGIES CORP.<br>　　Plaintiff | §<br>§<br>§ | SA05CA0593 |
| v. | §<br>§ | Civil Action No. _____ XR |
| MARYLAND PERFORMANCE<br>WORKS, LTD., PROFORM<br>PROTECTIVE FILMS INC., and<br>ROB FREEMAN<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§ | |

## ORIGINAL COMPLAINT

Plaintiff, XPEL Technologies Corp. (hereinafter "XPEL") respectfully shows the Court as follows:

### I.
### PARTIES

1. Plaintiff XPEL Technologies Corp., is a corporation that is incorporated under the laws of the State of Nevada which has its principal place of business in San Antonio, Bexar County, Texas.

2. Defendant, Maryland Performance Works Ltd. (hereinafter "Maryland Performance Works"), is a corporation that is incorporated under the laws of the State of Maryland with its principal place of business at 7705 Carter Road, Suite G, Sykesville, Maryland 21784. Maryland Performance Works may be served with process by serving its registered agent, Christopher C. Tsien, at 10320 Little Patuxent Parkway, Suite 1200, Columbia, Maryland 21044.

3. Defendant, Proform Protective Films Inc. (hereinafter "Proform"), is a corporation that is incorporated under the laws of the State of Maryland with its principal place of business at 3220 D Corporate CT, Ellicott City, Maryland 21042. Proform may be served with process by serving its registered agent, Rob Freeman, at 3220 D Corporate CT, Ellicott City, Maryland 21042.

4. Defendant Rob Freeman ("Freeman") is a citizen of the State of Maryland. Freeman may be served with process at 3220 D Corporate CT, Ellicott City, Maryland 21042.

## II.
## JURISDICTION

5. Federal jurisdiction is proper due to diversity between the parties, and the amount in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. § 1332(a)(1). Maryland Performance Works, Proform Protective Films and Freeman (together the "Defendants") have sufficient contacts with Texas to justify this Court exercising jurisdiction over them. Further, a live controversy exists between XPEL and Defendants as set forth herein.

## III.
## VENUE

6. Venue is proper in this district because Paragraph 50 of the principal contract in dispute provides, in relevant part, that "[a]ll disputes between the parties shall be resolved by a court sitting in Bexar County, Texas, USA, the county of Licensor's headquarters." Also, Defendants have conducted ongoing business with XPEL in San Antonio, Texas.

## IV.
## FACTS

7. XPEL creates hundreds of trade secret, proprietary designs for protective coatings for hundreds of different models of automobiles. These car paint, headlight and window protection kits are delivered electronically via XPEL's proprietary software which is accessed by the end users' hardware.

8. "XPEL's Products" include XPEL's automotive paint protection, headlight protection and window film products designed by XPEL. "XPEL's Property" includes any patents, marks, know-how, copyrights, industrial design rights, proprietary processes, proprietary information and other intangible property rights encompassed in or related to the software product and any related

works required or useful to manufacture, use and sell XPEL's Products and related technology for the same including, without limitation, the contractual restriction set forth in the Agreement against copying or making derivative works from any of the software product, its content or product files, including without restriction XPEL's patterns or templates. "Know-how" includes the technology and technical information pertaining to production, quality control procedures and methods for creating, manufacturing, testing and installing the software product, the technology and technical information pertaining to production, quality control procedures and methods for designing, creating, manufacturing and testing the elements that comprise the product files, the technology and technical information pertaining to the installation, adjustment and testing of equipment required to manufacture the products and technology and technical information pertaining to manufacturing skills relating to the products.

9. Access to XPEL's proprietary computer database is protected by Distributor Agreements and End User License Agreement (EULA), which contractually limit use of and computer access to XPEL's product designs.

10. XPEL's business and its competitive survival is based upon restricting use of and computer access to XPEL's product designs to contractually limited uses in a manner which preserves XPEL's proprietary and exclusive property.

11. Ruination of XPEL's business can occur rapidly if XPEL's proprietary material is misused.

12. On or about June 25, 2001 and on multiple occasions thereafter until June 23, 2005, Defendants accepted the terms of a contract via a click-through mechanism on XPEL's internet site entitled "Design Access Program End User License Agreement" (hereinafter "Agreement"), which sets forth the rights, duties and obligations of and between the parties.

13. On information and belief, Defendants have violated the Agreement by conducting their business at a location without XPEL's knowledge or written permission.

14. On information and belief, Defendants also have violated the Agreement by competing with, offering to sell and selling competing goods, and by having an interest in and/or operating a competitive business, and by using and/or creating a competitive database of designs or patterns to be used to manufacture similar or competitive products.

15. On information and belief, Defendants unlawfully misused XPEL'S Property, is unlawfully misusing XPEL's Property and intends to continue unlawfully misusing XPEL's Property.

16. On information and belief, Defendants knowingly misrepresented their intentions and activities to XPEL with respect to Defendants' activities and the uses to which Defendants were putting and intended to put XPEL's Property.

17. On information and belief, Defendants have used XPEL's Property in breach of the Agreement, in breach of Defendants' implied and oral agreements, in breach of Defendants' representations, and in breach of Defendants' relationship duties with XPEL concerning the same.

18. Defendants' actions constitute a serious material breach of the Agreement by failing to protect and jeopardizing XPEL's intellectual property.

19. Defendants' conduct has injured and continues to injure XPEL.

## V.
## CAUSES OF ACTION

### A. Breach of Agreement.

20. Defendants breached their Agreement with XPEL, written, expressed, oral and implied by conducting their business at a location without XPEL's knowledge or written permission; competing with, offering to sell and selling competing goods, or having an interest in and/or

operating a competitive business, and by using and/or creating a competitive database of designs or patterns to be used to manufacture similar or competitive products; and copying or misusing XPEL's Property.

### B. Fraud, Fraudulent Inducement and Misrepresentation.

21. Defendants obtained the benefits of the Agreement and continued to obtain benefits pursuant to the Agreement by intentionally, knowingly, and willfully misrepresenting Defendants' intentions with respect to their business operations pursuant to the Agreement, to Defendants' unjust enrichment and to XPEL's injury, resulting in actual and exemplary damages.

### C. Unjust Enrichment, Misappropriation, and Conversion.

22. Defendants have been unjustly enriched with XPEL's Property, have misappropriated XPEL's Property and have converted XPEL's Property, all to Defendants' benefit and to XPEL's injury.

### D. Tortious Interference with Existing Contracts.

23. XPEL has contracts with certain dealers, with which Defendants willfully and intentionally interfered, by convincing said dealers to purchase competing products. XPEL also has contractual agreements with former XPEL employees, with which Defendants willfully and intentionally interfered, by convincing said former XPEL employees to violate those contracts. Defendants' interference was a proximate cause of XPEL's injury, resulting in actual and exemplary damages.

### E. Tortious Interference with Prospective Contracts.

24. XPEL reasonably anticipated that it would enter into business relationships with dealers and customers of its products, with which Defendants willfully and intentionally interfered.

Defendants' interference was a proximate cause of XPEL's injury, resulting in actual and exemplary damages.

### F. Unfair Competition.

25. Defendants have and are engaging in unfair competition with XPEL through their misuse of XPEL's Property to compete with XPEL.

### G. Misuses of Proprietary Information and Theft of Trade Secrets.

26. Defendants and XPEL had a relationship in which Defendants knew that XPEL considered XPEL's Property to be proprietary and that XPEL's Property was not to be used or disclosed outside of Defendants' relationship with XPEL. Defendants have, nevertheless, taken and used and disclosed XPEL's Property outside of the Defendants' business relationship with XPEL and in competition with XPEL, all to Defendants' benefit and XPEL's injury.

### H. Exemplary and Punitive Damages.

27. Defendants' above-described acts injured XPEL. On information and belief, Defendants' above-described acts have been done knowingly, willfully and with reckless disregard for XPEL's rights. XPEL requests exemplary, punitive and exemplary damages in an amount not less than three times XPEL's actual damages pursuant to all of its available statutory and common law rights.

### I. Declaratory Judgment.

28. Defendants are irrevocably committed to pursuing in the future the above-described acts and courses of conduct to XPEL's great, immediate and calculable harm. XPEL seeks declaratory judgment that the Defendants' above-described acts and courses of conduct are unlawful.

J.    **Injunctive Relief.**

29.    Defendants' acts have and will cause XPEL great and irreparable injury for which no remedy at law is adequate. XPEL seeks permanent injunctive relief ordering the Defendants to cease the above-described unlawful acts and courses of action.

K.    **Attorney's Fees.**

30.    XPEL has retained the law firm of Jackson Walker L.L.P. to represent XPEL in this action, and has agreed to pay the firm all reasonable and necessary attorneys fees and expenses incurred to resolve this controversy, and XPEL therefore requests judgment for XPEL against Defendants for XPEL's reasonable and necessary attorney fees, costs and expenses, together with pre-judgment and post-judgment interest.

L.    **Consolidated Allegations.**

31.    Each of the facts alleged above is alleged with regard to each and every cause of action herein.

## VI.
## PRAYER FOR RELIEF

NOW, THEREFORE, XPEL prays for the following relief:

A.    A permanent injunction enjoining Defendants and their directors, officers, agents, servants, employees, attorneys and all other persons acting in privity or in concert with them and from:

    a.    Competing with XPEL pursuant to the terms of the Agreement;

    b.    Offering to sell or selling competitive goods;

    c.    Having an interest in or operating a competitive business;

d.  Using or creating any competitive database of designs or patterns that can be used to manufacture similar or competitive products within any country, state, or any county in which XPEL or an XPEL Licensee has a business;

e.  Soliciting any XPEL employee, licensee, customer, or supplier to end or change their relationship with XPEL;

f.  Using XPEL's Property to compete with XPEL;

g.  Using XPEL's Property to solicit national or foreign accounts;

h.  Using or disclosing XPEL's Property.

B.  Defendants be required to pay to XPEL such damages, together with prejudgment interest and post-judgment interest, as XPEL has sustained in consequence of Defendants' wrongful acts. This includes, without limitation, all applicable statutory and common law awards and damages.

C.  Defendants be required to account for and return to XPEL all monies, gains and profits and advantages obtained by Defendants due to Defendants' wrongful acts and to return to XPEL all of XPEL's Property and derivative works thereof.

D.  Defendants be required to pay enhanced, punitive, and exemplary damages to XPEL in an amount at least three times the amount of XPEL's actual damages or Defendants' wrongfully obtained profits, whichever is greater. This includes, without limitation, all applicable statutory and common law awards and damages.

E.  Defendant be required to pay to XPEL, XPEL's costs of this action, including, without limitation, XPEL's reasonable and necessary attorney's fees. This includes, without limitation, such attorney's fees and relief pursuant to 28 U.S.C. §2202 and 17 U.S.C. §101 et. seq. or to any applicable statute.

F.   Judgment that:

   (1)   Defendants' use of XPEL's Property is unlawful.

   (2)   Defendants' courses of conduct as set forth hereinabove are unlawful.

G.   An award to XPEL for such other and further relief as this Court may deem just.

Respectfully Submitted,

JACKSON WALKER L.L.P.
112 E. Pecan Street, Suite 2100
San Antonio, Texas   78205
Telephone: (210) 978-7700
Facsimile:  (210) 978-7790

By: *Karen Monsen*
Karen Monsen
State Bar No.  24027401
Richard G. Garza
State Bar No.  07737200

ATTORNEYS FOR XPEL
TECHNOLOGIES CORP.